**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNIVERSITY OF KANSAS HOSPITAL AUTHORITY )<br>4000 Cambridge Street )<br>Kansas City, KS 66160 )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ALEX M. AZAR II, in his official capacity )<br>as Secretary of Health & Human Services )<br>United States Department of )<br>Health & Human Services, )<br>200 Independence Avenue, S.W. )<br>Washington, D.C.  20201 )<br>)<br>Defendant. )<br>) | Civil Action No. <u>1:20-cv-778</u> |

## COMPLAINT

Plaintiff, a hospital that participates in the Medicare program and purchases drugs through the 340B Drug Pricing Program, brings this complaint against Defendant Alex M. Azar II, in his official capacity as Secretary of Health and Heath Human Services ("Secretary"), and alleges as follows:

## INTRODUCTION

1. Plaintiff seeks judicial review of a final determination of the Secretary regarding the Hospital Outpatient Prospective Payment System ("OPPS") and Ambulatory Surgical Center Payment Systems and Quality Reporting Programs for Calendar Years ("CYs") 2018, 2019, and 2020. *See* 82 Fed. Reg. 52356, 52493-511, 52622-25 (Nov. 13, 2017) ("CY 2018 Final Rule"); 83 Fed. Reg. 58818, 58079-81 (Nov. 21, 2018) ("CY 2019 Final Rule") and 84 Fed. Reg. 61142, 61317-27 (Nov. 12, 2019) ("CY 2020 Final Rule") (collectively, the "Final Rules"). Specifically, Plaintiff challenges the Secretary's determination in the Final Rules to reduce Medicare reimbursement rates for prescription drugs purchased by certain public and not-for-profit hospitals and clinics on a discounted basis under section 340B of the Public Health Service Act ("PHSA") (the "340B Program").

2. Plaintiff brings this action under the Social Security Act, 42 U.S.C. § 1395, *et seq.* (the "Medicare statute") and the Administrative Procedure Act, 5 U.S.C. §§ 551, *et seq.* (the "APA"). The Plaintiff alleges that the Secretary acted *ultra vires*, exceeded his scope of authority under the Medicare statute in contravention of Congressional intent, as well as acted arbitrarily and capriciously, by reducing reimbursement payment for drugs purchased under the 340B Program.

3. Congress enacted the 340B Program in 1992, lowering the cost of drugs for certain public and not-for-profit hospitals (like Plaintiff) and federally funded clinics serving large numbers of low-income patients. By so doing, Congress enabled these hospitals to "stretch scarce Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services." H.R. Rep. No. 102-384(II), at 12 (1992); *see also* 82 Fed. Reg. at 52493 & n. 18 (quoting House Report and noting that "[t]h statutory intent of the 340B Program is to maximize scarce Federal resources as much as possible, reaching more eligible patients").

4. As this Court explained, "hospitals participating in the 340B Program purchase 340B drugs at steeply discounted rates, and when those hospitals prescribe the 340B drugs to Medicare beneficiaries, they are reimbursed by HHS at OPPS rates." *Am. Hosp. Ass'n v. Azar*, 348 F. Supp. 3d 62, 69 (D.D.C. 2018).

5. The Final Rules eliminate nearly all of the differential between Medicare OPPS reimbursement rates and the discounted purchase costs mandated for 340B hospitals. The Secretary's decision to reduce payment rates in all three years is a violation of both the Secretary's authority under the Medicare statute and the purpose and design of the PHSA provisions establishing the 340B Program. It is also arbitrary and capricious agency action under the APA.

6. Starting January 1, 2018 (the effective date of the CY 2018 Final Rule), the Secretary began reimbursing covered outpatient drugs and biologicals acquired through the 340B Program at each drug's average sales price ("ASP") minus 22.5 percent. The Secretary extended that payment reduction through CYs 2019 and 2020. The CY 2020 Final Rule also extended the payment reduction to non-excepted off-campus provider-based departments.

7. This Court has found that the Secretary exceeded his authority when he reduced the 2018 and 2019 Medicare reimbursement rate for drugs covered by the 340B Program. *See Am. Hosp. Ass'n*, 348 F. Supp. 3d at 79-83 and *Am. Hosp. Ass'n v. Azar*, 385 F. Supp. 3d 1 (D.D.C. 2019), *consolidated appeal docketed* Nos. 19-5048 and 19-5198 (D.C. Cir. July 16, 2019). In accordance with these two decisions, Plaintiff brings this action to seek declaratory relief from the Secretary's 340B Program payment reduction for CYs 2018, 2019, and 2020. (The 2020 payment reduction is the same as the 2018 and 2019 reductions in all material respects.)

8. The Final Rules severely threaten Plaintiff's ability to provide critical healthcare programs to their communities, including underserved populations, by depriving it of millions of dollars of savings previously generated through the difference between Medicare OPPS reimbursement rates and 340B discounts. These payment reductions are unlawful and the Secretary must pay Plaintiff the statutorily-mandated rate of ASP plus 6 percent for all 340B drug claims submitted during CYs 2018, 2019 and 2020.

## PARTIES

9. Plaintiff, University of Kansas Hospital Authority, Medicare Provider No. 17-0040, is a hospital that participates in the Medicare program and the 340B Program that is affected by the unlawful reimbursement cut for 340B drugs.

10. Defendant Alex M. Azar II is the Secretary of the United States Department of Health and Human Services, which administers the Medicare program established under title XVIII of the Social Security Act. Defendant Azar is sued in his official capacity only. The Centers for Medicare & Medicaid Services ("CMS") is the federal agency to which the Secretary has delegated administrative authority over the Medicare and Medicaid programs. References to

the Secretary herein are meant to refer to him, his subordinate agencies and officials, and to his official predecessors or successors as the context requires.

## JURISDICTION AND VENUE

11. This action arises under the Medicare statute, title XVIII of the Social Security Act, 42 U.S.C. § 1395, section 340B of the Public Health Services Act, 42 U.S.C. § 256b, and the APA, 5 U.S.C. § 551.

12. This Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 405(g). Due to the Secretary's Final Rules, Plaintiff has been paid amounts for covered 340B drugs that are approximately 30 percent lower than the rate prescribed by 42 U.S.C. § 1395*l*(t)(14)(A)(iii). Plaintiff has presented claims to the Secretary in the form of a concrete request for additional Medicare reimbursement that challenges the Secretary's authority to reduce reimbursement for covered 340B drugs contrary to 42 U.S.C. § 1395*l*(t)(14)(A)(iii). *See* Exhibit A. Further administrative appeal and review of Plaintiff's claims is futile because the Secretary's administrative adjudicators are bound by the Secretary's Final Rules and the Secretary has already determined that he will not revise the Final Rules, leaving Plaintiff with no recourse other than federal court review. *See Am. Hosp. Ass'n v. Azar*, 410 F. Supp. 3d 142, 154 (D.D.C. 2019) (finding that exhaustion of claims would have been futile because the Secretary did not argue that further administrative review was necessary or that it would give the agency opportunity to self-correct; the Secretary already considered and rejected plaintiffs' arguments; additional administrative review would not develop the factual record or provide the court with further agency expertise; and no administrative review body could override the agency's binding regulations).

13. Alternatively, this Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States.

14. Venue is proper in this district under 28 U.S.C. § 1391 because Defendant resides in the District of Columbia and a substantial part of the events giving rise to this action occurred in this district.

15. An actual controversy exists between the parties under 28 U.S.C. § 2201, and this Court has authority to grant the requested declaratory relief under 28 U.S.C. §§ 2201 & 2202 and 5 U.S.C. § 706.

## STATEMENT OF FACTS

### A.  Statutory and Regulatory Framework

16. Under the 340B Program, certain hospitals serving a disproportionate share of low-income individuals and federally funded clinics (so-called "covered entities") may purchase outpatient prescription drugs at discounted prices. Drug manufacturer participation in the 340B Program is essentially mandatory: manufacturers must participate as a condition of having their drugs covered by Medicaid, *see* H.R. Rep. 102-384, at 12 (1992), and they cannot discriminate against covered entities in the distribution of drugs by, *e.g.*, setting minimum purchase amounts or treating covered entities differently from other purchasers during drug shortages, *see* 59 Fed. Reg. 25110, 25111 (May 13, 1994).

17. Covered entities are statutorily defined at PHSA § 340B(a)(4) and include qualifying hospitals, Ryan White HIV/AIDS program grantees, black lung clinics, rural referral centers, critical access hospitals, Title X family planning clinics, and other institutions that primarily serve the poor, indigent, or the under- or uninsured. The 340B Program is designed to enable covered entities to purchase 340B drugs for all eligible patients, including patients with

Medicare or private insurance, at the reduced cost but still bill Medicare at the OPPS rate prescribed under the Medicare statute.

18. According to the Government Accountability Office, access to reduced price medications enables covered entities "to expand the type and volume of care they provide to the most vulnerable patient populations." U.S. Dep't of Health & Human Servs., Justification of Estimates for Appropriations Committees at 325 (2017).

19. Plaintiff is a "covered entity" under the 340B Program and is paid under the OPPS system.

**B.  Medicare OPPS Reimbursement**

20. Medicare is a federal health insurance program for eligible disabled individuals and senior citizens. 42 U.S.C. §§ 1395 *et seq*. Plaintiff provides hospital services to Medicare beneficiaries that qualify for reimbursement through Medicare.

21. In 1997, Congress directed the Secretary to create a hospital Outpatient Prospective Payment System through which Medicare was to pay for services offered in hospital outpatient departments. *See* 42 U.S.C. § 1395*l*.

22. Starting in 2004, Congress ordered the Secretary to set reimbursement rates for separately payable drugs not otherwise bundled into the payment for an outpatient service. *See* Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, § 621, 117 Stat. 2307, codified at 42 U.S.C. § 1395*l*(t)(14). This payment rate covers <u>all</u> applicable drugs whether purchased through the 340B Program or on the open market by non-340B covered entities.

23. By statute, the Secretary is directed to set payment rates for all such drugs using one of two alternative processes:

    a. The Secretary may set the payment rate at the average hospital acquisition cost for the drug for that year (to vary, at the discretion of the Secretary, by "hospital group" as defined by "relevant characteristics"), "as determined by the Secretary taking into account . . . hospital acquisition cost survey data," 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I); or

    b. If "hospital acquisition cost data are not available," the Secretary may use the average sales price for the drug established by 42 U.S.C. § 1395w-3a and "as calculated and adjusted by the Secretary as necessary for purposes of this paragraph," 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(II).

24. The Secretary has paid for such drugs pursuant to the second option, and adjusted the rate as required by statute to ASP plus 6 percent. 42 U.S.C. § 1395w-3a(b)(1)(A)-(B); *see also* 77 Fed. Reg. 68210, 68387-89 (Nov. 15, 2012) (acknowledging that hospital acquisition data is not available and adding the 6 percent to account for overhead and administrative costs).

25. There is no separate rate established only for 340B drugs or any alternative method for the Secretary to establish a different payment methodology for 340B drugs. This statutory default rate of ASP plus 6 percent was applied without adjustment until January 1, 2018.

26. Notwithstanding this clear statutory framework, on July 13, 2017, the Secretary proposed to lower the Medicare reimbursement rate for drugs purchased under the 340B Program by adopting a third methodology not authorized by the statute. The Secretary changed the payment rate for 340B drugs to ASP minus 22.5 percent. 82 Fed. Reg. 33558, 33634 (July 20, 2017). The Secretary did not have the data necessary to "precisely calculate the price paid by 340B hospitals for [any] particular covered outpatient drug," and so instead relied on an estimate. *Id.* According to the Secretary, the new rate would better recognize "the significantly lower acquisition costs of such drugs incurred by a 340B hospital," and "better represent[] the average acquisition cost for these drugs and biologicals." *Id.*

27. The Secretary finalized this proposal on November 13, 2017 over the strong objection of commenters. 82 Fed. Reg. at 52362; *see also*, *e.g.*, Exhibit B (comments submitted to CY 2018 Final Rule). This significant change in reimbursement has effectively eliminated the benefit of the 340B Program for covered entities like Plaintiff because it eliminates the difference between the steep discounts offered by the 340B Program and full OPPS reimbursement.

28. The Secretary attempts to rely on the language included in the second statutory option—42 U.S.C. § 1395*l*(t)(14)(A)(iii)(II)—as authority to make the change. *See*, *e.g.*, 82 Fed. Reg. at 52499 (noting that that statutory "calculate and adjust" authority gives the Secretary "broad discretion" to adjust payments for drugs). However, the Secretary's policy clearly exceeds this statutory authority because the reduction made is expressly based on the estimated acquisition costs of 340B drugs, *i.e.* a variation of the cost-based methodology set forth under the first clause of the applicable statutory provision, 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I). *See*, *e.g.*, 82 Fed. Reg. at 52501. The Secretary, by his own admission, has never been able to reliably collect the required cost data for each drug as required under 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I). *See* 82 Fed. Reg. at 33634 (acknowledging that the Secretary lacked the data necessary to "precisely calculate the price paid by 340B hospitals for [any] particular covered outpatient drug."). Therefore, he improperly sought to use *aggregate* acquisition costs as estimated by the Medicare Payment Advisory Commission ("MedPAC") as a proxy for that data, even though payment under 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(II) must be based on average sales price, *not* acquisition costs. *Id.*

29. The Secretary did not perform his own independent analysis of 340B discounts and instead applied MedPAC's estimate of the average 340B discount (22.5 percent) to the ASP.

*See id*. However, "because the required acquisition cost was not available . . . and the statutory scheme is clear that if the Secretary does not have that data, he must calculate reimbursement rates by reference to the drugs' *average sales prices*." *Am. Hosp. Ass'n*, 348 F. Supp. 3d at 82 (emphasis original). Consequently, the Secretary impermissibly invoked authority under one section of the statute to circumvent the requirements of another. The net effect is a third methodology that exists nowhere in the statute.

30. Under the binding statutory provision, 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(II), the Secretary has no authority to reduce the statutory rate as he has in the Final Rules. As this Court has held, "the language and structure of subsection (t)(14)(A)(iii)(II) make clear that the Secretary may not make 'basic and fundamental changes' under the purported auspices of making mere 'adjustments' to the rates statutorily imposed by that subsection." *Id.*, 348 F. Supp. 3d at 80; *see also id.*, 348 F. Supp. 3d at 81 ("the rate reduction's magnitude and its wide applicability inexorably lead to the conclusion that the Secretary fundamentally altered the statutory scheme established by Congress for determining . . . rates, thereby exceeding the Secretary's authority to 'adjust' . . . .")

31. The Secretary's CY 2018 Final Rule also exceeds his authority in that it undermines the 340B Program by depriving eligible hospitals of a critical portion of resources Congress intended to provide those hospitals via the 340B Program. Elimination of these resources has put public and not-for-profit covered entities into even more precarious financial situations, curtailing their ability to provide essential healthcare services and programs in their communities. Therefore, the Secretary's efforts to "align," 82 Fed. Reg. at 52495, the purchase price of 340B drugs with reimbursements for those drugs is directly contrary to Congressional

intent to create a differential between reimbursement and purchase price to generate additional resources for covered entities.

32.     The detrimental and impermissible cuts were adopted again in CYs 2019 and 2020.  *See* 83 Fed. Reg. at 58981 ("we are finalizing our proposals without modification [to] continu[e] the 340B Program policies that were implemented in CY 2018 with the exception of the way we are calculating payment for 340B-acquired biosimilars"); *see also* 84 Fed. Reg. at 61325 ("we are finalizing our proposal . . . to pay ASP minus 22.5 percent for 340B-acquired drugs including when furnished in nonexcepted off-campus [provider-based departments] . . . [continuing] the 340B Program policies that were implemented in CY 2018 with the exception of the way we are calculating payment for 340B-acquired biosimilars").

C.     **Judicial Review and Plaintiff's Claim**

33.     A plaintiff must typically satisfy two requirements before seeking judicial review under 42 U.S.C. § 405(g):  a plaintiff must "present" their claim to the Secretary for a decision, and then must exhaust all available administrative remedies.  *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976).  The presentment requirement is not waivable, although the exhaustion may be.  *See Am. Hosp. Ass'n v. Azar*, 895 F.3d 822, 825-26 (D.C. Cir. 2018).

34.     The Plaintiff hospital has presented claims for payment to the Medicare program for its separately payable drugs affected by the Final Rules.  For CYs 2018, 2019, and 2020, Medicare has paid drug claims submitted by the Plaintiff hospital at ASP minus 22.5 percent.  *See* Exhibit A (sample claims for payment and remittance documents).

35.     The Plaintiff hospital has filed "Requests for Redetermination" to the Secretary's contractor.  These requests are administrative appeals of Medicare's failure to pay them the statutorily-prescribed rate for their services.  *See id.* (objecting to the ASP minus 22.5 percent

payment rate as exceeding the Secretary's authority and requesting payment at ASP plus 6 percent).

36. The Medicare contractor governing Plaintiff's claims has a statement on its website that "[i]n accordance with Medicare's national payment policy an administrative review is not available for applicable drugs acquired under the 340B drug program that are reimbursed under [the] Outpatient Prospective Payment System (OPPS)."[1]

37. Immediate judicial review is therefore appropriate because Plaintiff's claims raise pure legal issues, there are no factual disputes that could impede their jurisdictional resolution, and there is nothing to indicate that the administrative appeals process could result in the agency overturning the Final Rules. *See Hall v. Sebelius*, 689 F. Supp. 2d 10, 23-24 (D.D.C. 2009) ("exhaustion may be excused where an agency has adopted a policy or pursued a practice of general applicability that is contrary to law" (quotation omitted)); *see also Am. Hosp. Ass'n*, 410 F. Supp. 3d at 154.  As evidenced by the redetermination decisions and the posting on the contractor's website, the Secretary has taken the position that there can be no administrative review of 340B Program reimbursement disputes.  Further administrative review is futile.

## COUNT 1
### CY 2018 Final Rule:
### Violation of the Social Security Act and Administrative Procedure Act

38. The allegations set forth in paragraphs 1 through 37 are incorporated by reference as if fully set forth herein.

---

[1] https://www.wpsgha.com/wps/portal/mac/site/appeals/guides-and-resources/340b-acquired-drugs-appeals/!ut/p/z0/fcxBDsIgEEDRE5HBVptu1ajElNSVobMxY6FIbACheH57A
pc_efmAoAA9fZ2lxQVP89oDNo-bEI3YtLzrK8n5Xp7v9antDpd-B1fA_2A
9VEkepQWMtLyY81MAZYvTJjPymiWTQ0mjyaDqLX8yGj_FJaOZTsWuJEZDc4b4xuEHXc
ZMQw!!/ (accessed March 13, 2020).

39. The APA permits judicial review of agency actions, findings, and conclusions that are "not in accordance with law" or are "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. §§ 706(2)(A), 706(2)(C).

40. When "Congress has directly spoken to the precise question at issue," this Court must give effect to Congress's unambiguously stated intent. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). It is a "core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Util. Air Regulatory Gp. v. EPA*, 134 S. Ct. 2427, 2446 (2014)

41. Congress has unequivocally permitted the Secretary two avenues—and no others—to adjust reimbursement for covered outpatient drugs and biologicals. *See* 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I)–(II). On the one hand, the Secretary may set reimbursement based on hospital acquisition cost survey data. 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I). On the other, if such data are not available, the Secretary may adjust the average sales price. 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(II). The Secretary's CY 2018 Final Rule did not utilize either method, but instead relied on an estimate of aggregate acquisition costs as a proxy for appropriate data. The Secretary's change to lower the Medicare reimbursement rate for drugs purchased under the 340B Program to ASP minus 22.5 percent is therefore *ultra vires*, contrary to clear statutory directive, and beyond the Secretary's limited authority.

42. For these and other reasons, the Secretary's rate cut in the CY 2018 Final Rule is unlawful.

**COUNT 2**
**CY 2018 Final Rule:**
**Violation of the Social Security Act and Administrative Procedure Act**

43.     The allegations set forth in paragraphs 1 through 37 are incorporated by reference as if fully set forth herein.

44.     The APA permits judicial review of agency actions, findings and conclusions that are "arbitrary, capricious" or "an abuse of discretion." 5 U.S.C. § 706(2)(A).

45.     The Secretary's decision in the CY 2018 Final Rule to decrease reimbursement rates for separately payable drugs purchased under the 340B Program by nearly 30 percent impermissibly conflates two alternative statutory methods for setting payment rates and is therefore arbitrary and capricious and an abuse of discretion.

46.     The Secretary's policy is also inconsistent with Congress's intent in enacting he 340B Program, which was to assist covered entities in "stretch[ing] scare Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services." H.R. Rep. No. 102-384(II), at 12.

47.     For these and other reasons, the Secretary's rate cut in the CY 2018 Final Rule is unlawful.

**COUNT 3**
**CY 2019 Final Rule:**
**Violation of the Social Security Act and Administrative Procedure Act**

48.     The allegations set forth in paragraphs 1 through 37 are incorporated by reference as if fully set forth herein.

49.     The APA permits judicial review of agency actions, findings, and conclusions that are "not in accordance with law" or are "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. §§ 706(2)(A), 706(2)(C).

50. When "Congress has directly spoken to the precise question at issue," this Court must give effect to Congress's unambiguously stated intent. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). It is a "core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Util. Air Regulatory Gp. v. EPA*, 134 S. Ct. 2427, 2446 (2014)

51. Congress has unequivocally permitted the Secretary two avenues—and no others—to adjust reimbursement for covered outpatient drugs and biologicals. *See* 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I)–(II). On the one hand, the Secretary may set reimbursement based on hospital acquisition cost survey data. 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I). On the other, if such data are not available, the Secretary may adjust the average sales price. 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(II). The Secretary's CY 2019 Final Rule did not utilize either method, but instead relied on an estimate of aggregate acquisition costs as a proxy for appropriate data. The Secretary's change to lower the Medicare reimbursement rate for drugs purchased under the 340B Program to ASP minus 22.5 percent is therefore *ultra vires*, contrary to clear statutory directive, and beyond the Secretary's limited authority.

52. For these and other reasons, the Secretary's rate cut in the CY 2019 Final Rule is unlawful.

### COUNT 4
### CY 2019 Final Rule:
### Violation of the Social Security Act and Administrative Procedure Act

53. The allegations set forth in paragraphs 1 through 37 are incorporated by reference as if fully set forth herein.

54. The APA permits judicial review of agency actions, findings and conclusions that are "arbitrary, capricious" or "an abuse of discretion." 5 U.S.C. § 706(2)(A).

55. The Secretary's decision in the CY 2019 Final Rule to decrease reimbursement rates for separately payable drugs purchased under the 340B Program by nearly 30 percent impermissibly conflates two alternative statutory methods for setting payment rates and is therefore arbitrary and capricious and an abuse of discretion.

56. The Secretary's policy is also inconsistent with Congress's intent in enacting he 340B Program, which was to assist covered entities in "stretch[ing] scare Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services." H.R. Rep. No. 102-384(II), at 12.

57. For these and other reasons, the Secretary's rate cut in the CY 2019 Final Rule is unlawful.

### COUNT 5
### CY 2020 Final Rule:
### Violation of the Social Security Act and Administrative Procedure Act

58. The allegations set forth in paragraphs 1 through 37 are incorporated by reference as if fully set forth herein.

59. The APA permits judicial review of agency actions, findings, and conclusions that are "not in accordance with law" or are "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. §§ 706(2)(A), 706(2)(C).

60. When "Congress has directly spoken to the precise question at issue," this Court must give effect to Congress's unambiguously stated intent. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).  It is a "core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Util. Air Regulatory Gp. v. EPA*, 134 S. Ct. 2427, 2446 (2014)

61. Congress has unequivocally permitted the Secretary two avenues—and no others—to adjust reimbursement for covered outpatient drugs and biologicals.  *See* 42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I)–(II).  On the one hand, the Secretary may set reimbursement based on hospital acquisition cost survey data.  42 U.S.C. § 1395*l*(t)(14)(A)(iii)(I).  On the other, if such data are not available, the Secretary may adjust the average sales price.  42 U.S.C. § 1395*l*(t)(14)(A)(iii)(II).  The Secretary's CY 2020 Final Rule did not utilize either method, but instead relied on an estimate of aggregate acquisition costs as a proxy for appropriate data.  The Secretary's change to lower the Medicare reimbursement rate for drugs purchased under the 340B Program to ASP minus 22.5 percent is therefore *ultra vires*, contrary to clear statutory directive, and beyond the Secretary's limited authority.

62. For these and other reasons, the Secretary's rate cut in the CY 2020 Final Rule is unlawful.

**COUNT 6**
**CY 2020 Final Rule:**
**Violation of the Social Security Act and Administrative Procedure Act**

63. The allegations set forth in paragraphs 1 through 37 are incorporated by reference as if fully set forth herein.

64. The APA permits judicial review of agency actions, findings and conclusions that are "arbitrary, capricious" or "an abuse of discretion."  5 U.S.C. § 706(2)(A).

65. The Secretary's decision in the CY 2020 Final Rule to decrease reimbursement rates for separately payable drugs purchased under the 340B Program by nearly 30 percent impermissibly conflates two alternative statutory methods for setting payment rates and is therefore arbitrary and capricious and an abuse of discretion.

66. The Secretary's policy is also inconsistent with Congress's intent in enacting he 340B Program, which was to assist covered entities in "stretch[ing] scare Federal resources as far as possible, reaching more eligible patients and providing more comprehensive services." H.R. Rep. No. 102-384(II), at 12.

67. For these and other reasons, the Secretary's rate cut in the CY 2020 Final Rule is unlawful.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests an Order:

a. Declaring that the Final Rules are *ultra vires* and exceed the Secretary's statutory authority in violation of the Social Security Act, as well as arbitrary and capricious in violation of the APA;

b. Vacating and setting aside the Final Rules as to the changes made to the 340B drug payment methodology;

c. Directing the Secretary to use the methodology used in CY 2017 for all 340B Program payments for dates of service in CYs 2018, 2019, and 2020;

d. Requiring the Secretary to reimburse Plaintiff for the difference between amounts paid for 340B drugs pursuant to the Final Rules (ASP minus 22.5 percent) and what would have been paid for those same drugs under the CY 2017 methodology required by statute (ASP plus 6 percent);

e. Requiring the Secretary to pay legal fees and costs of suit incurred by the Plaintiff; and

f. Providing such other just and proper relief as the Court may consider appropriate.

Respectfully submitted,

/s/ *Christopher P. Kenny*
Christopher P. Kenny (D.C. Bar No. 991303)
Mark D. Polston (D.C. Bar No. 431233)
Elizabeth N. Swayne (D.C. Bar No. 1029380)
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, D.C.  20006
202.626.9253 (phone)
202.626.3737 (fax)
CKenny@kslaw.com

Date:  March 19, 2020